RIDGEWOOD CEMETERY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43843. Promulgated July 5, 1932.

*Robert N. Holt, Esq.*, and *Herbert R. George, Esq.*, for the petitioner.

*Arthur Carnduff, Esq.*, for the respondent.

OPINION.

BLACK: In this proceeding the petitioner seeks a redetermination of its income-tax liability for the years 1925 and 1926, for which years the respondent has determined deficiencies in the amount of $8,491.36 and $234.97, respectively. The year 1924 was also included in the petition, but at the hearing both parties agreed that, since the deficiency notice and statement thereto attached show that respondent determined an overassessment for 1924, the Board has no jurisdiction for 1924. Accordingly, the proceeding, in so far as it relates to 1924, is hereby dismissed.

Some of the adjustments made by respondent in petitioner's income for the taxable years are not contested and so much of the deficiency as is based thereon is not in controversy.

Petitioner's only assignment of error is that the Commissioner erred in reducing the cost of certain property acquired by the petitioner in April, 1920, from a cost price of $150,000 to $50,000. Respondent and petitioner agree as to the basis of cost of one of the tracts of land owned by petitioner, and as to the other tract respondent in the deficiency notice determined a cost of $50,000, but now concedes that the basis of cost of this tract should be $52,500 (cost to transferor). Respondent, in the statement attached to the deficiency notice, states: " Your contention that the cost of sales should not be decreased each of the years under consideration, is denied. This office holds that the basis for determining the cost of the land sold, is the same as the cost in the hands of the predecessor owner. See Article 1597, Regulations 69."

It is true that the lands from which petitioner plotted its cemetery lots were acquired in 1920, when the Revenue Act of 1918 was in effect, and the profits, if any, involved in this proceeding are from the sale of cemetery lots which took place in 1925 and 1926. Hence the basis of cost of these cemetery lots is determined under the provisions of the Revenue Act of 1926, which governs both taxable years.

The respondent having determined that petitioner acquired the lots in a "reorganization" as defined by the Act of 1926, and that the basis of cost of the land to the petitioner is the same as it was in the hands of the transferor, the burden of proof is on petitioner to show that it did not acquire the land in a "reorganization" as defined by the 1926 Act, and that, hence, its basis of cost is actual cost to it, without reference to what the transferor originally paid for the land.

The petitioner is a corporation, organized under the laws of the State of Illinois on May 10, 1920, for the purpose of acquiring land and operating a cemetery in the immediate vicinity of Chicago, Cook County, Illinois. Its orginial authorized capital stock was $200,000 or 20,000 shares of a par value of $10 each. Of this amount, $2,000 was subscribed for in cash and $100,000 in property, being the real estate involved in this proceeding.

The petition filed by petitioner contains the following allegation:

The petitioner on April 20, 1920, purchased from the Chas. F. Heinig Co. 98 acres of land costing them some years previously $52,500. The sale price was $150,000 and the Chas. F. Heinig Co. accepted as payment two mortgages amounting to $50,000 and 10,000 shares of stock of a par value of $10 each of the Ridgewood Cemetery Company in payment thereof.

This allegation was never qualified, modified or abandoned by petitioner. The facts show that in May, 1920, one L. M. Bangham offered to sell to the petitioner a certain tract of land containing 98 acres subject to two mortgages aggregating $50,000 and on condition that the petitioner would issue to Bangham $100,000 of its capital stock, being 10,000 shares of a par value of $10 each. This offer was accepted. The land was conveyed to the petitioner by one George Brinkman, who appears to have held title to the land, and 10,000 shares of stock of the petitioner were issued to L. M. Bangham, May 20, 1920. The petitioner, on the same day that it acquired the land, employed the Chas. F. Heinig Company as fiscal agent to sell the balance of its stock on the basis of a 20 per cent commission, the selling to begin as soon as the petitioner had qualified under the rules of the Securities Department of the State of Illinois.

In a protest filed by the Chas. F. Heinig Company with the Commissioner of Internal Revenue, January 18, 1926, which was offered in evidence by petitioner and referred to by petitioner in its pleadings, the Chas. F. Heinig Company speaks of the above transaction by which petitioner acquired the lands for the cemetery lots, as follows:

The Company, on April 20, 1920, transferred to the Ridgewood Cemetery Company, property costing $52,500 in return for 10,000 shares of stock valued

at $5.00 per share and first and second mortgages amounting to $50,000 and the following entries were made on the books of the company at that time:

*Dr.:* $52,500.
*Cr.:*

| | |
|---|---|
| 1st Mortgage | $20,000 |
| 2nd Mortgage | 30,000 |
| Ridgewood Cemetery stock | 50,000 |
| Total | 100,000 |

It is the petitioner's contention that the cost of the 98-acre tract of land here under consideration is to be determined under section 202(b) of the Revenue Act of 1918, which provides in part as follows:

SEC. 202. (b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of the fair market value, if any * * *.

The petitioner contends that the cost of the land to it was $50,000 in mortgages assumed and 10,000 shares of stock of a par value of $10 per share and having a fair market value same as par, making total cost of the land $150,000. The respondent takes the position that the transaction falls within the provisions of section 204(a)(7) of the Revenue Act of 1926, which provides as follows:

SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property, except that * * *

* * * * * * *

(7) If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

Section 203(h) of the Revenue Act of 1926 provides:

SEC. 203. (h) As used in this section and section 201 and 204—
(1) The term "reorganization" means * * * (b) a transfer by a corporation of all or part of its assets to another corporation, if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets were transferred * * *
(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization * * *.

The respondent claims that the Chas. F. Heinig Company owned the land in question, although it was held in the name of Brinkman, and that it organized the petitioner and transferred the land to the petitioner for part of its capital stock issued upon incorporation, and

was immediately in control of petitioner because of its ownership of much more than 80 per cent of its then issued and outstanding capital stock. We think respondent's contention on this issue must be sustained.

The Chas. F. Heinig Company was organized under the laws of the State of Illinois on February 21, 1920, a date preceding the organization of petitioner, to act as financial, commercial or general agent for corporations, firms or individuals. It was not authorized under the terms of its charter to hold or own real estate. As we interpret the evidence in this proceeding, including the protest of the Chas. F. Heinig Company filed with the Commissioner of Internal Revenue in a proceeding involving its own tax liability, which protest was offered in evidence by petitioner without objection from respondent, Chas. F. Heinig acquired the land some time before it was transferred to petitioner (just how long is not shown) for Chas. F. Heinig Company and paid therefor $52,500. The Chas. F. Heinig Company lacked authority to hold real estate; therefore, title to the land was in the name of Brinkman and when Brinkman conveyed the land to petitioner and it issued 10,000 shares of stock therefor to L. M. Bangham, Bangham held the stock as the nominee of the Chas. F. Heinig Company and the stock was owned by that company. If these facts are not true, then the facts stated in the protest by the Chas. F. Heinig Company offered in evidence by petitioner were not true and the burden was on petitioner to show what the true facts were.

On the facts we hold the petitioner was " a corporation resulting from a reorganization " within the meaning of section 203 (h) (2) of the Revenue Act of 1926. The Heinig Company was " in control of the corporation to which the assets are transferred," according to the terms of section 203 (h) (1) of the Revenue Act of 1926, as it had received over 98 per cent of the outstanding stock.

Accordingly, we are of the opinion that the transaction falls within the provisions of section 204 (a) (7) of the Revenue Act of 1926, and that the basis for determining gain or loss from sales of lots is the same as it would be in the hands of the transferor, that is, $52,500. This basis of cost will neither be increased nor diminished by any profit or loss recognized under the 1918 Act as to the transfer in 1920 by the Chas. F. Heinig Company of the land in question to petitioner. The evidence shows that the Commissioner treated this transaction as one involving neither gain nor loss.

*Decision will be entered under Rule 50.*